IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLARENCE KERSEY,

        Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

        Defendant.
_____

Civ. No. 6:14-cv-01247-MC

OPINION AND ORDER

MCSHANE, Judge:

      Plaintiff Clarence Kersey seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, the Commissioner's decision is affirmed in part and reversed in part. Because it is not clear that the ALJ would have to find plaintiff disabled, this matter is remanded to the ALJ for additional findings.

## **BACKGROUND**

      Plaintiff filed an application for DIB on July 13, 2010. Tr. 16. Following a denial of benefits, plaintiff requested a hearing before an administrative law judge (ALJ). On March 8, 2013, an ALJ determined plaintiff was not disabled. Tr. 16-28. The Appeals Council then

1 – OPINION AND ORDER

denied plaintiff's request for review. Tr. 1. This appeal followed.

## **STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## **DISCUSSION**

Plaintiff argues that the ALJ failed to give sufficient reasons for rejecting the testimony of the plaintiff, the testimony of his treating physician, and the testimony of his wife. The Plaintiff further argues that the ALJ's decision is not supported by substantial evidence, is based on an error in the hypothetical question posed to the vocational expert (VE), and the occupational evidence provided by VE was not consistent with the occupational information supplied by the Dictionary of Occupational Titles (DOT). Pl.'s Br. 2.

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920 (2012). The initial

burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**I.      Rejection of Plaintiff's Symptom Testimony**

Plaintiff contends that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting his subjective symptom statements concerning the extent and severity of his impairments. Pl.'s Br. 2.

The ALJ found that statements made by plaintiff concerning the intensity, persistence, and limiting effects of his alleged symptoms were "less than fully credible." Tr. 24. The ALJ found that, contrary to plaintiff's testimony that he ceased working due to his alleged disabilities, "the record supports that he stopped working because of an early retirement buy out for which he received a bonus to retire." *Id.* The ALJ further found that plaintiff "was doing his regular job as of the last day worked with no documented attendance problems or complaints about his performance [and] contemporaneous medical records [do] not support that any increased symptoms or new problems would have prohibited him from continuing . . ." *Id.*

The ALJ also found plaintiff "not credible at the hearings." *Id.* The ALJ reasoned that "his presentation was in no way consistent with all of the problems alleged at the hearing." *Id.*

Specifically, the ALJ observed that plaintiff "s[a]t comfortably during both hearings despite testimony that he can only sit for ten minutes" and he also "did not appear nervous despite saying he is 'always on edge.'" *Id.* The ALJ also observed that "despite claims of 'severe hearing loss' by claimant and his step-daughter . . . he had no problems what-so-ever at either hearing with understanding questions posed by me or his attorney." *Id.*

Finally, the ALJ found plaintiff not credible due to inconsistencies between plaintiff's activities of daily living (ADL) and his claims of disability. Tr. 25. Specifically, the ALJ found that plaintiff "waters horses, cares for cats and dogs, goes door to door, and to chapel for his religion, and reads." *Id.* Moreover, the ALJ noted that despite plaintiff's claims that he could walk only one hundred feet, the record shows that plaintiff walks 2, 3, 4, and 5 miles. *Id.* Further, the ALJ found that although plaintiff claimed to play computer games for only two to three hours per day, "the record shows that [he] plays computer games 'all day.'" *Id.*

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

The ALJ may also consider the claimant's daily activities, work record, and the

observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. Specifically, when a claimant's work history undercuts his assertions, the ALJ may rely on that contradiction to discredit the claimant. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Further, when a claimant's daily activities "are transferable to a work setting" or "contradict claims of a totally debilitating impairment," performance of those activities may serve as a basis for discrediting a claimant. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012).

The ALJ may also employ ordinary techniques of credibility evaluation, including observations of the claimant's "demeanor at the hearing," to reject a claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002). The ALJ's observations of a claimant's functioning, however, may not form the sole basis for discrediting the claimant's testimony. *Om v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, if the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas,* 278 F.3d at 959 (internal citation omitted).

Here, the ALJ provided several specific, cogent reasons to support her adverse credibility finding. First, the ALJ observed that plaintiff's ADLs were more extensive than the limitations he claimed. The ALJ specifically noted plaintiff's ability to care for animals, play computer games all day, and walk up to five miles despite allegedly being able to walk only one hundred feet. Second, the ALJ also opined that plaintiff's testimony did not match what she observed at the hearing. Finally, the ALJ observed that plaintiff received a bonus for retiring early and that he had no problems with attendance or performance at work. An inspection of the record reveals that plaintiff, indeed, received a $30,000 bonus for retiring early and that he admitted to working "a lot of overtime" prior to accepting the bonus and retiring. Tr. 62, 72. Although plaintiff

5 – OPINION AND ORDER

argues that this bonus did not represent a "significant financial incentive" to retire from his job, tr. 15, this Court finds that the ALJ did not arbitrarily discredit plaintiff's testimony and that her conclusion that plaintiff stopped working for reasons other than a debilitating disability was reasonable, such that her conclusion must be upheld. *See Batson*, 359 F.3 at 1198.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As such, the ALJ's credibility finding is affirmed.

## II.   Rejection of Treating Doctors' Testimony

Plaintiff argues that the ALJ did not give legally sufficient reasons to reject the opinions of his treating physicians, Dr. Patrick Sarver, M.D. and Dr. Farrukh, M.D. Pl.'s Br. 2, 11-12.

### A. Dr. Sarver

In March 2012, Dr. Sarver provided a disability evaluation on a check-the-box form at the request of plaintiff's attorney. Tr. 26, 500-03. In this evaluation, Dr. Sarver opined that plaintiff would likely miss more than two days of work per month due to his impairments and would need to lie down four to five times per day due to pain. Tr. 500-03. In October 2012, Dr. Sarver filled out another form and opined that plaintiff could lift 50 pounds occasionally and 20 pounds continuously, but that he was limited to occasional bilateral overhead reaching. Tr. 654-56. The October 2012 evaluation also stated that plaintiff was able to sit for six hours and stand and walk for two hours "in an eight hour work day." Tr. 655. The next question on that form, which Dr. Sarver left blank, asked "if the total time for sitting, standing, and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 8 hours?" *Id.* Moreover, the first page of the October 2012 form stated that the purpose of the form was "to determine the individual's ability to do **work-related activities on a regular and continuous**

**basis**, and explained that a "regular and continuous basis means 8 hours a day, for five days a week, or an equivalent work schedule." Tr. 654 (emphasis in original).

The ALJ gave "little weight" to Dr. Sarver's March 2012 opinion, stating it was "not consistent with his October 2012 opinion, his own medical records, and the medical evidence as a whole." Tr. 26. The ALJ did, however, give "significant weight" to Dr. Sarver's October 2012 opinion, noting that "it is consistent with the RFC given and the medical record as a whole." Tr. 25. The ALJ also noted the contrasting opinion of Dr. Telew from December 2012, which stated that plaintiff had only mild to moderate limits in all areas, he should be able to perform simple low stress jobs, and that because he "'worked 26 years . . . until he retired in 2010 [and] all his psychiatric disorders have been present for 20-30 years[,] [h]e should be able to use the same skill set as he did while working.'" *Id.* (quoting tr. 669).

Plaintiff argues that the ALJ erred by giving little weight to Dr. Sarver's March 2012 opinion because it is consistent with, and supplements his October 2012 opinion. Pl.'s Br. 10. Specifically, plaintiff argues that he could have laid down multiple times during the day and still stood and walked a similar amount as noted in Dr. Sarver's October 2012 opinion. *Id.* This Court disagrees.

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The medical opinion of a claimant's treating physician is entitled to "special weight" because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989)(citation omitted). The ALJ may reject the uncontradicted opinion of a treating or examining physician by providing clear and convincing reasons supported by substantial evidence in the record. See *Lester*, 81 F.3d at

830-31; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Barnhart*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)(citation omitted). Finally, an ALJ may reject a physician's opinion if it conflicts with the physician's other findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, the ALJ found that Dr. Sarver's opinion was contradicted by his own records, as well as by the opinion of Dr. Telew. Accordingly, because Dr. Sarver's opinion was contradicted by Dr. Telew's opinion, the specific and legitimate standard applies here. *Barnhart*, 427 F.3d at 1216. The ALJ met this standard by noting conflicts between Dr. Sarver's opinions from March 2012 and October 2012. *Tommasetti*, 533 F.3d at 1041.

Contrary to plaintiff's assertion that he would have been able to lie down multiple times during the day and still sit, stand, and walk in amounts noted in Dr. Sarver's October 2012 opinion, inspection of Dr. Sarver's October 2012 opinion reveals the opposite. Specifically, the October 2012 check-the-box form that Dr. Sarver filled out stated in bold underlined text at the beginning of the form that the questions were designed to determine plaintiff's ability to do work-related activities "[eight] hours a day, for five days a week, or an equivalent work schedule." Moreover, the question Dr. Sarver answered relating to plaintiff's ability to sit, stand, and walk, specifically asked how long plaintiff could perform those activities "in an eight hour work day." Finally, the very next question on the form asked what activities plaintiff performs

8 – OPINION AND ORDER

for the rest of the eight hour work day, if not sitting, standing, and walking. Critically, Dr. Sarver provided no answer to this question. Accordingly, where Dr. Sarver's March 2012 opinion states that plaintiff must be able to lie down throughout the day, his October 2012 opinion makes clear that plaintiff can sit, stand, and walk for a full eight hour day with no need to lie down. I find the ALJ's interpretation of Dr. Smith's opinion was rational and, although plaintiff disagrees with the ALJ's interpretation of the medical record, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). Therefore, the ALJ's credibility finding is affirmed.

**B. Dr. Farrukh**

Dr. Farrukh completed insurance disability forms on March 22, 2011 and April 27, 2011 that found plaintiff "totally disabled." Tr. 405, 420. The ALJ did not address either of these opinions and plaintiff argues that was "clear legal error." Pl.'s Br. 12, n. 1; Pl.'s Reply Br. 8-10.

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). However, physicians may provide opinions on the ultimate issue of disability, i.e., about whether a claimant is capable of any work, given the claimant's limitations. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2002). The ALJ is not bound by the uncontroverted opinions of physicians on disability, but cannot reject them without presenting clear and convincing reasons for doing so. *Reddick v. Chater* 157 F.3d 715, 725 (9th Cir. 1998).

For an error to be harmless, the ALJ's error must be inconsequential to the ultimate non-disability determination. *Stout v. Comm'r of Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006). This standard applies when the ALJ fails to provide any reasons for rejecting the

evidence at issue, leaving the reviewing court without anything in the record for the court to review to determine whether the ALJ's decision was adequately supported. *Id.* Unless the reviewing court can confidently conclude that no reasonable ALJ would have reached the same conclusion without the error, the error is not harmless. *Id.* at 1056.

Here, the ALJ failed to discuss Dr. Farrukh's opinions that plaintiff was totally disabled. Because this Court cannot confidently conclude that the ALJ would have rejected Dr. Farrukh's opinion had she considered it, this Court finds the ALJ's omission of Dr. Farrukh's opinion was an error. Because this Court cannot confidently conclude that no reasonable ALJ would have reached a different conclusion without the error, I find that the error was not harmless. *Stout,* 454 F.3d at 1056.

### III. Rejection of Plaintiff's Wife's Testimony

Plaintiff argues that the ALJ did not give legally sufficient reasons to reject the lay testimony of his wife, Mary Kersey. Pl.'s Br. 2, 16-18.

The ALJ found Ms. Kersey's testimony "credible only to the extent it reflects her personal observations of [plaintiff's] level of functioning and not as a medical basis to establish disability." Tr. 25.

An ALJ must consider the statements of family and friends. *Smolen*, 80 F.3d at 1288. "Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The ALJ can reject the testimony of lay witnesses only by providing reasons germane to each witness. *Smolen*, 80 F.3d at 1288. Lay witness testimony may be disregarded on the same basis as claimant's discredited subjective reports. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). While lay witnesses are not competent to

testify to medical diagnoses, they may testify as to a claimant's symptoms or how an impairment affects ability to work, *Nguyen v. Chafer*, 100 F.3d 1462, 1467 (9th Cir. 1996), and therefore their testimony cannot be disregarded without comment. *Id.* The ALJ may also reject lay witness testimony due to inconsistencies with the medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Here, the ALJ considered the opinion of Ms. Kersey and found her observations of plaintiff's functioning credible. The ALJ only found Ms. Kersey's testimony not credible as a medical basis to establish disability. However, lay witnesses are not competent to testify to medical diagnoses. *Nguyen*, 100 F.3d at 1467. Accordingly, I find that the ALJ did not err by rejecting Ms. Kersey's opinion as a medical basis to establish disability.

IV. **ALJ's Decision at Step Five**

Plaintiff argues that the ALJ's decision at step five is not supported by substantial evidence and that the ALJ erred by: (A) basing her findings on the testimony of the VE because the RFC posed to the VE did not encompass all the limitations presented in the ALJ's written RFC; and (B) relying on the VE's testimony that was inconsistent with the DOT. Pl.'s Br. 4-9.

A. **Adequacy of the RFC**

Plaintiff argues that the ALJ's written RFC was "much more limited" than the RFC that was given to the VE and, therefore, the ALJ's reliance on the VE's testimony was an error. Pl.'s Br. 6. Specifically, plaintiff argues that the ALJ's written RFC states that he can "perform bilateral overhead work and reaching occasionally," and the Court should interpret this RFC as meaning that plaintiff can "perform bilateral overhead work" with no restrictions, and that he can perform tasks that require reaching in any direction only "occasionally." *Id.* Plaintiff argues that when the RFC is read as such, the RFC posed to the VE at the hearing that he "can occasionally

11 – OPINION AND ORDER

reach overhead, bilaterally," does not encompass the limitation that he can only occasionally reach in any direction. *Id.*

The ALJ found that plaintiff had the RFC to perform "less than a full range of medium work," lift and carry 50 pounds occasionally and 25 pounds frequently, stand or walk for two hours in an eight hour workday or sit for six hours in an eight hour workday, "*perform bilateral overhead work and reaching occasionally*," "understand, remember, and carry out simple instructions that can be learned in 30 days or less (due to his pain, medication side effects, and psychological impairments)," have occasional contact with the public and coworkers, but not be required to engage in group tasks with other coworkers, and "not engage in a job where excellent hearing is required at any noise level." Tr. 20 (emphasis supplied). The ALJ based her RFC on "the evidence in its entirety," but "specifically" on the portions of the record discussed in her opinion. Tr. 26.

In her analysis of the evidence that supports the RFC, the ALJ analyzed and gave "significant weight" to the limitations endorsed by Dr. Sarver in his October 2012 opinion. Tr. 25. The ALJ specifically noted that, in Dr. Sarver's October 2012 opinion, he opined that plaintiff "could perform bilateral overhead reaching occasionally. He could bilaterally feel and push/pull frequently . . ." *Id.* The ALJ concluded her analysis of Dr. Sarver's October 2012 opinion by stating that "[w]here the RFC deviates from Dr. Sarver's opinion, it does so based on a lack of medical basis for some of the restrictions (limitation of the use of bilateral feet, avoidance of heights, extreme cold and irritants)." *Id.*

At the hearing on September 14, 2012, the ALJ proposed the following hypothetical to the VE:

> If we assume we have an individual, with the same age, education, and past work as the Claimant, and we further assume this individual can lift 50 pounds

> occasionally . . . 25 frequently; can stand and/or walk up to six hours in an eight-hour day; *can occasionally reach overhead, bilaterally; and should only occasionally do bilateral work overhead*, would that individual be able to do Claimant's past work?

Tr. 81 (emphasis supplied).

The RFC is the maximum a claimant can do despite her limitations. See 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here, plaintiff's interpretation of the written RFC bifurcates the first four words "perform bilateral overhead work" from the last three words "and reaching occasionally" and results in an RFC that would provide no limitations in plaintiff's ability to perform overhead work, but the ability to reach in any direction only occasionally. This interpretation of the written RFC directly contradicts the limitations endorsed by Dr. Sarver in his October 2012 opinion, which the ALJ quoted, analyzed, and gave significant weight to. Specifically, Dr. Sarver's opinion stated that plaintiff could only occasionally perform bilateral overhead reaching, but could frequently bilaterally feel and push/pull. Moreover, the ALJ listed the limitations in the RFC that deviated from the restrictions in Dr. Sarver's October 2012 opinion and plaintiff's ability to perform bilateral overhead work and reaching were not on that list.

13 – OPINION AND ORDER

This Court is not deprived of its faculties for drawing specific and legitimate inferences from the ALJ's opinion. *Magallanes*, 881 F.2d at 755. As such, the Court declines to adopt plaintiff's interpretation of the RFC that directly contradicts the ALJ's analysis of plaintiff's RFC. Accordingly, this Court finds that the ALJ did not err by relying on the testimony of the VE because the RFC given to the VE encompassed the same limitations set forth in the ALJ's written RFC.

**B. Occupational Evidence Provided by the VE**

Plaintiff argues that the ALJ erred by relying on the VE's testimony because the VE's testimony was inconsistent with the DOT. Pl.'s Br. 6-9. Specifically, plaintiff asserts that the VE opined he could perform work as a janitor (DOT 382.687-018), hand packager (DOT 311.677-018), and lumber straightener, (DOT 669.687-018). Plaintiff, however, argues that no job in the DOT matches the number given for the janitor occupation (DOT 382.687-018) and, therefore, the ALJ erred by relying on the VE's testimony that he could perform work as a janitor under that DOT number. Plaintiff also argues that the hand packager and lumber straightener jobs both require constant reaching and, according to plaintiff's interpretation of the RFC as discussed above, he can only occasionally reach in any direction. *Id.*[1] Moreover, plaintiff argues that even if this Court rejects his interpretation of the RFC and finds that he is limited only with regard to bilateral overhead reaching, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* defines "reaching" as "extending hand(s) and arm(s) in any direction," which includes reaching overhead bilaterally and, therefore, the constant reaching required by the hand packager and lumber straightener

---

[1] As stated above, this Court rejects plaintiff's interpretation of the RFC. Accordingly, plaintiff's argument that he cannot work as a hand packager or lumber straightener because he cannot reach in any direction more than occasionally fails.

14 – OPINION AND ORDER

occupations exceeds his ability to reach overhead bilaterally only occasionally. *Id.* Plaintiff argues that because the ALJ failed to acknowledge or explain these potential conflicts, she failed to meet her burden as step five to identify jobs that exist in significant numbers in the national economy that he can perform. *Id.*

At step five, the ALJ has the burden to identify jobs that exist in significant numbers in the national economy that the claimant can perform. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). "When making disability determinations, the SSA relies primarily on the DOT for information about the requirements of work in the national economy." *Abdalla v. Colvin*, 2015 WL 4426222, at *6 (D. Or. July 16, 2015) (citing Soc. Sec. Ruling (SSR) 00–4p at 2, available at 2000 WL 1898704); s*ee also Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). "The occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT." *Skelton v. Comm'r of Soc. Sec.*, 2014 WL 4162536, at *13 (D. Or. Aug. 18, 2014). When a VE provides information about the requirements of an occupation, the ALJ has an affirmative duty to determine whether the information conflicts with the DOT and to obtain an explanation for the apparent conflict. SSR 00-4p at *2; *Massachi*, 486 F.3d at 1152–53. "If there is a conflict, the ALJ may rely upon a VE's testimony rather than the DOT when the issue is 'complex,' 20 C.F.R. § 404.1566(e), or when 'the record contains persuasive evidence to support the deviation.'" *Ricker v. Colvin*, 2013 WL 3944424, at *7 (D. Or. July 30, 2013) (quoting *Johnson*, 60 F.3d at 1435).

Here, as plaintiff correctly asserts, no job exists in the DOT under the number 382.687-018. Moreover, as plaintiff also correctly asserts, the DOT states that the hand packager and lumber straightener jobs require constant reaching. Although an ALJ may rely on a VE's testimony rather than the DOT when the issue is complex or the record contains persuasive

15 – OPINION AND ORDER

evidence to support doing so, neither situation is present here. Moreover, "[m]any courts in this circuit have found that there is a potential inconsistency between VE testimony that a job could be performed by someone who can only occasionally reach overhead and DOT job descriptions requiring frequent reaching." *Ricker*, 2013 WL 3944424, at *7. The ALJ failed to acknowledge or explain the potential conflict between the DOT and instead found that "pursuant to SSR 00-4p . . . the information contained in the [VE's] testimony is consistent with the information in the [DOT]." Tr. 27. Accordingly, the ALJ erred at step five by failing to obtain an explanation from the VE that would resolve the VE's deviation from the DOT before the ALJ relied on the VE's testimony and found plaintiff not disabled. As such, to resolve the inconsistency between the VE's testimony and DOT, this Court remands the matter to the ALJ for further inquiry. Remand for an award of benefits is not appropriate here as it is not clear that the ALJ would have to find the plaintiff disabled with the adopted RFC.

## **CONCLUSION**

Because outstanding issues remain which must be resolved, and because it is not clear from the record that plaintiff is entitled to disability benefits, the ALJ's decision is affirmed in part and reversed in part. On remand, the ALJ shall elicit testimony from the VE regarding any deviation from the DOT. The ALJ shall also discuss Dr. Farrukh's opinions that plaintiff is totally disabled.

IT IS SO ORDERED.

DATED this 10th day of December, 2015.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge